



# OPINION

No. 04-10-00618-CV

Randolph **COLEMAN**, Individually and as Independent Executor of the Last Will and
Testament of Randolph M. Coleman, Jason G. Coleman, Courtney P. Cody, and Jonathon
Coleman,
Appellants

v.

Betty Dowlearn **COLEMAN**, Individually and as Independent Executrix of the Last Will and
Testament of Randolph M. Coleman,
Appellee

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2005-PC-2630
Honorable Tom Rickhoff, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  May 11, 2011

AFFIRMED

Randolph O. Coleman, Jason Coleman, Courtney Cody, and Jonathan Coleman (the

Colemans) appeal the trial court's order granting Appellee Betty Coleman's motion for partial

summary judgment and denying the Colemans' competing motion for partial summary judgment.

The Colemans argue that the trial court misconstrued the Last Will and Testament of Randolph

M. Coleman (Randolph) and abused its discretion in excluding their summary judgment evidence. We affirm the trial court's judgment.

## BACKGROUND

When he died Randolph owned several mineral interests, one of which was in three tracts of land in Crockett County, Texas. The mineral interest was leased to Occidental Petroleum, Inc. (Oxy), which operates the wells. These tracts are included in Oxy's "South Cross Unit," which is a consolidation of producing mineral interests.[1] Oxy was making payments to Randolph on the three wells that were producing when he died. The parties' dispute centers on the disposition of this mineral interest.

Randolph bequeathed to Betty, his fourth wife, a life estate in his mineral interest in Crockett County. The bequest reads: "I give all of my interest in the Crockett County, Texas, mineral interest that Occidental Permian Ltd. is presently making payments to me on under owner number 250-061596, to my wife, Betty Dowlearn Coleman for the term of her life . . . ." After Randolph died, additional wells were drilled pursuant to the leases of Randolph's mineral interest, and Betty received the royalties from those wells.

The Colemans, including Randolph's children and grandchildren from his prior marriages, filed suit against Betty in probate court in Bexar County, challenging her claim to the royalties from the new wells. They sought a declaratory judgment that construed the bequest as not including the rights to royalties from wells drilled after Randolph's death. Betty

---

[1] According to Oxy's records, Randolph owned a mineral interest in South Cross Unit tracts 5, 22, and 23, under owner number 250-061596.

counterclaimed, seeking a declaratory judgment that she was entitled to those royalties.[2] The trial court granted Betty's motion and denied the Colemans' motion.[3]

## STANDARD OF REVIEW

We review a declaratory judgment under the same standards as other judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008). When both parties move for partial summary judgment, and the trial court grants one motion and not the other, we review both parties' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009*).* A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Construction of an unambiguous will is a matter of law, which we review de novo. *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied); *Penland v. Agnich*, 940 S.W.2d 324, 326 (Tex. App.—Dallas 1997, no writ).

## DISCUSSION

Our primary objective in construing a will is to determine the testator's intent. *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Gregg v. Jones*, 699 S.W.2d 378, 379 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). We must ascertain his intent from the normal, usual, and legal meaning of the words found within the four corners of the will. *Stahl*, 610 S.W.2d at 151; *Williams v. Smith*, 146 Tex. 269, 280, 206 S.W.2d 208, 214 (1947). "A will should be so construed as to give effect to every part of it, if the language is

---

[2] The Appellants also requested attorney's fees and an accounting of royalties paid to Betty.
[3] The trial court severed the will construction issue into a separate cause, making the judgment final for purposes of appeal.

reasonably susceptible of that construction. . . . The testator will not be presumed to have done a useless thing." *Morriss v. Pickett*, 503 S.W.2d 344, 347 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.) (citing *Republic Nat'l Bank of Dallas v. Fredericks*, 155 Tex. 79, 83, 283 S.W.2d 39, 42–43 (1955)). We focus not on what the testator intended to write but on the meaning of the words the testator actually used. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). "If the will is unambiguous, [we will] not go beyond specific terms in search of the [testator's] intent." *Id.*

The Colemans argue that the will unambiguously limits Betty's life estate to the royalties from the wells that were producing when Randolph died. They argue that the trial court's construction gives no effect to the phrase "that Oxy is presently making payments to me on" and ignores that, given Randolph's experience with oil and gas terms, he would have more succinctly drafted the will if he wanted Betty's life estate to include the entire mineral interest. They argue, alternatively, that the will is ambiguous.

We hold that Randolph unambiguously bequeathed to Betty his entire mineral interest in Crockett County identified as being leased to Oxy. Randolph wrote in his will, "I give all of my interest in the Crockett County, Texas, mineral interest," indicating his intent to bequeath the entirety of his "mineral interest" without qualification. This language is not obscured by Randolph's knowledge of a more succinct or technically precise phrasing of this bequest. The following phrase "that Oxy is presently making payments to me on under owner number 250-061596" does not limit the mineral interest but describes it in additional detail. *See Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) (per curiam) (noting that a conveyance must identify a property with reasonable certainty). Although the Colemans argue that this phrase would make sense as a property description only if Randolph had owned other mineral interests in Crockett

County, the phrase is not "mere surplusage" because it provides additional detail of the mineral interest that Randolph intended to bequeath.[4]

## CONCLUSION

The will is unambiguous, and grants Betty a life estate in the mineral interest in Crockett County. We, therefore, affirm the trial court's judgment.[5]

Rebecca Simmons, Justice

---

[4] Although the Colemans rely on *In re Hite*, 700 S.W.2d 713 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.), the present case is factually distinguishable because of the different phrasing of the bequest.

[5] Because we hold that the will is unambiguous, we do not address the Colemans' alterative argument that the will is ambiguous and need not address their contention that the trial court erred in excluding their summary judgment evidence. *See* Tex. R. App. P. 47.1 (requiring our opinions to be "as brief as practicable" while "address[ing] every issue raised and necessary to final disposition of the appeal").